O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA BEVERLY,<br><br>             Plaintiff,<br>   v.<br><br>COUNTY OF LOS ANGELES; DEPUTY DAVID CAMPS, in his individual and official capacity; DEPUTY THOMAS KIM, in his individual and official capacity; DOES DEFENDANTS 1 through 10, inclusive,<br><br>             Defendants. | Case No.: 2:12-cv-10874-ODW(JCx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [33]** |

## I. INTRODUCTION

This matter is the culmination of a complicated love triangle. Plaintiff Cynthia Beverly was arrested in Palmdale, California, on February 29, 2012. In her complaint, Beverly alleges that Los Angeles County Sheriff's Deputies and high-ranking city officials conspired and retaliated against her so as to intimidate her from speaking out against the Sheriff's Department's " harass[ment] and mistreat[ment of] minorities in the Antelope Valley." (SUF ¶ 53.)  On October 25, 2013, Defendants moved for Summary Judgment on the grounds that Beverly failed to produce anything more than speculative and unsubstantiated accusations. (ECF No. 33.)  Despite having three months to do so, Beverly failed to oppose the Motion. After carefully considering the evidence adduced from Defendants' Motion, the Court finds that Beverly has failed to

establish any viable claims against Defendants and consequently **GRANTS** Defendants' Motions for Summary Judgment. (ECF No. 33.)

## II. FACTUAL BACKGROUND

On February 29, 2012, Los Angeles County Sheriff's Deputies Thomas Kim and David Camps responded to Melissa Griffin's residence after Griffin reported that Beverly was stalking her. (SUF ¶ 6.) Once there, the Deputies took a report from Griffin indicating that Beverly was obsessed with Griffin's boyfriend, Clarence "Lorenzo" Richardson, and that Beverly had been appearing at or near Griffin's home and following her around for the previous several weeks. (SUF ¶ 7.)

Griffin reported that Beverly's stalking had culminated in two altercations that day at Griffin's home. (SUF ¶ 8.) The first incident involved Beverly, Beverly's adult daughter, and a third woman appearing at Griffin's home demanding to see Lorenzo and threatening to "beat" Griffin and her daughter. (SUF ¶ 9.) The second incident involved Beverly's son appearing at Griffin's home while Beverly yelled threats from the street that she would bring other family members to fight with Griffin and her family. (SUF ¶ 10.) Griffin and her daughter reported to Deputies Kim and Camps that they feared for their safety. (SUF ¶ 11.)

Investigating Griffin's report, the Deputies called Beverly and left her a message containing the substance of Griffin's allegations and asking her to return their call. (SUF ¶ 14.) At 9:30 p.m. that night, Beverly appeared at the Palmdale Sheriff's Station in response to the message. (SUF ¶ 17.) The Deputies met with Beverly and discussed the day's incidents. (SUF ¶ 18.) During their discussion, Beverly acknowledged that she went to Griffin's home with her adult daughter and a third woman and that threats were made against Griffin. (SUF ¶ 19.) Beverly showed the Deputies text messages from Beverly to Griffin admitting she had "disrespected" Griffin's home when she had been there that day. (SUF ¶¶ 20–21.) The Deputies then informed Beverly that they were arresting her for felony stalking under California Penal Code section 646.9(a). (SUF ¶ 25.)

Beverly then told the Deputies for the first time about her involvement with activist groups in the community and her personal connections with some of the Sheriff's Department's lieutenants and captains.  (SUF ¶ 25.)

During booking, Beverly told the Deputies that she was diabetic and arrangements were made to have Deputy Britiana Hulse transfer Beverly to Palmdale Regional Medical Center for a medical booking clearance.  (SUF ¶¶ 27–28.)  By midnight that night—within two hours of her arrest and within two and a half hours since she arrived at the station—a physician and nurse saw Beverly.  (SUF ¶¶ 33–34.)  During the time Beverly was being transported and evaluated, she received water upon request from Deputy Hulse and from the medical staff.  (SUF ¶¶ 35–36.)  Deputy Hulse heard Beverly discuss her diabetes with the medical staff and the physician.  (SUF ¶ 37.)  After Beverly was medically cleared to be booked, Deputy Hulse transported Beverly back to Palmdale Station.  (SUF ¶ 39.)

The next evening, March 1, 2012, Sheriff's Deputies transported Beverly to the Lynwood Station infirmary for diabetes treatment by a registered nurse.  (SUF ¶ 40.)  Other than dry mouth, Beverly denied having any symptoms of acute distress, including polyuria, polydipsia, polyphagia, and blurred vision.  (*Id.*)  But upon testing, a nurse found that Beverly's blood glucose was high at 419 mg/dl and administered 15 units of regular insulin to bring Beverly's blood sugar down.  (SUF ¶ 41.)  Beverly normally takes 10 units of Humulin 70/30 twice a day.  (SUF ¶ 40.)  Beverly's blood glucose was monitored for the next several hours until it normalized at 3:30 a.m. the next morning.  (SUF ¶ 42.)  After refusing further medical treatment, Beverly was released from the infirmary.  (*Id.*)

Beverly was arraigned and released on her own recognizance the next morning, March 2, 2012.  (SUF ¶ 44.)  On March 5, 2012, Beverly appeared at the Palmdale Station where Lieutenant Ken Wright took her statement complaining about her arrest.  (SUF ¶¶ 45–46.)  In her interview, Beverly complained that she did not receive water for two and a half hours and that the Deputy who transported her (Hulse) did not tell

the medical staff at Palmdale Regional Medical Center about her diabetes—though she concedes that the medical staff did know this information and discussed it with her. (SUF ¶¶ 47–48.) In concluding the interview, Beverly added that at the levels her blood glucose reached she could have gone into a diabetic coma. (SUF ¶ 49.)

Though arrested for felony stalking under California Penal Code section 646.9, Beverly was ultimately only charged with misdemeanor stalking. On August 13, 2012, a Los Angeles County Superior Court judge dismissed her case. (SUF ¶¶ 51–52.)

Beverly then filed this action under 42 U.S.C. § 1983 alleging that her arrest was without probable cause, in retaliation for her involvement in First Amendment activities, and the result of a conspiracy among high-ranking city officials and members of the Sheriff's Department. (SUF ¶ 55.) These activities included her involvement as a "prominent spokesperson on behalf of the Community Action League and the Section 8 lawsuit," which involved complaints against the Sheriff's Department for its alleged harassment and mistreatment of minorities. (SUF ¶ 53.) She further alleges that this conspiracy was designed to prevent her from engaging in future First Amendment activities. (Compl. ¶ 99.) Finally, she alleges that she was not provided with medical care during her incarceration. (*Id.* ¶¶ 105–10.)

On November 25, 2013, the Court held a hearing on Defendants' Motion. (ECF No. 48.) Beverly failed to appear. The Court therefore continued the matter to December 16, 2013. On that date, Beverly appeared and requested another 30 days to respond to the Motion. The Court granted Beverly's request, allowing her until January 13, 2014, to oppose. (ECF No. 49.) As of the date of this Order, the Court has received no opposition or other response from Beverly. The Court therefore proceeds to consider the merits of the pending motion.

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.  DISCUSSION

Bringing claims under 42 U.S.C. § 1983, Beverly argues that the County and Deputies conspired to violate her constitutional rights and then seized her, falsely imprisoned her, and maliciously prosecuted her. Beverly further contends that these actions were in retaliation for her speaking out against harassment and mistreatment of minorities by the Sherriff's Department, and that this conspiracy was designed to prevent her from engaging in further First Amendment activities. Beverly also contends that Defendants' actions are part of an official policy of the County to unlawfully arrest citizens without probable cause. Finally, Beverly contends that the Deputies failed to provide her adequate medical care. The Court finds that Beverly
/ / /

has not established any viable claims and therefore **GRANTS** Defendants' Motion for Summary Judgment.

**A. Liability limitations**

The County and Deputies argue that they are immune from suit under the United States Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and the qualified-immunity doctrine, respectively.

*1.* Monell *liabiliy*

Section 1983 authorizes a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. While the statute does not define "person" or address whether a governmental unit may be sued under its provisions, the United States Supreme Court in *Monell* held that a local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. A local government entity will be liable "only where the entity's policies evince a deliberate indifference to the constitutional right and are the moving force behind the constitutional violation." *Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 660 (9th Cir. 2010).

To hold a municipality liable for the actions of its officers, a plaintiff must allege one of the following: "(1) that a [municipal] employee was acting pursuant to an expressly adopted official policy; (2) that a [municipal] employee was acting pursuant to a longstanding practice or custom; or (3) that a [municipal] employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).

Beverly contends that the County of Los Angeles has ratified customs and practices which permit and encourage its deputies to unjustifiably, unreasonably, and unlawfully arrest persons without probable cause in violation of the Fourth and Fourteenth Amendments, which would subject the County to § 1983 liability under *Monell*. (Compl. ¶ 75.)

Beverly has not presented any evidence that the County as an entity caused any of her constitutional violations, if indeed she has suffered any. Beverly claims the County does not discipline, prosecute, investigate, or deal with incidents and complaints of false arrests or falsification of evidence. (Compl ¶ 76.) This has led to a custom and practice within the County of encouraging this behavior. (*Id.*) But for all the accusations of customs and practices alleged in her Complaint, Beverly is unable to articulate any specific policy that the County has that resulted in her arrest, such as a policy to arrest suspects without probable cause, falsify evidence, deliberately ignore complaints of abuse, or fail to investigate any accusations leading to these abuses becoming a custom.

*Monell* erects a high barrier against the County's liability in this case. Beverly's conclusory allegations fail to surmount that hurdle at this summary-judgment stage. The Court therefore finds that the County bears no § 1983 liability in this case.

2.   *Qualified immunity*

Qualified immunity shields government officials acting in their official capacities not only from liability but even from litigation, unless their conduct violates a clearly established statutory or constitutional right that would be known to a reasonable person. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified-immunity analysis inquires whether (1) the plaintiff alleged sufficient facts to show that the defendant's conduct violated a constitutionally protected right, and (2) the violated right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the "clearly established" prong, a court considers whether it would have been clear to a reasonable government actor that her conduct was unlawful under the circumstances. *Saucier*, 533 U.S. at 202; *Marquez*, 322 F.3d at 692–93.

For the reasons discussed in detail below, Beverly has failed to demonstrate that the Deputy Defendants' conduct violated any of her constitutional rights. The Court ///

consequently finds that the Deputies are entitled to qualified immunity as to Beverly's § 1983 claims.

**B.     Section 1983 Claims**

Having found that the County is not subject to *Monell* liability, only Deputies Kim and Camps remain potentially liable under § 1983. Beverly asserts that the Deputies violated her constitutional rights of free speech and to be free from unreasonable searches and seizures, false imprisonment, malicious prosecution, and cruel and unusual punishment.

Liability attaches under § 1983 when an individual violates rights secured by the Constitution or laws of the United States while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *Id.*

*1.     Search and seizure*

The Fourth Amendment guarantees a person the right to be free from unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). An unjustified arrest or seizure—one unsupported by probable cause—is per se unreasonable. *United States v. Guzman-Padilla*, 573 F.3d 865, 876 (9th Cir. 2009); *see also Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (explaining that full-scale arrests—or "seizures"—must be supported by probable cause). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Conclusive evidence of guilt is not necessary to establish probable cause, but mere "suspicion, common rumor, or even strong reason to suspect are not enough." *Id.* (internal quotation marks omitted).

Beverly alleges that the Deputies violated her Fourth and Fourteenth Amendment rights against unreasonable searches and seizure when the Deputies unlawfully and unreasonably detained, handcuffed, arrested and imprisoned her without reasonable suspicion or probable cause. (Compl. ¶ 55.)

But Deputies Kim and Camps had probable cause to arrest Beverly for felony stalking. (SUF ¶ 24.) Under California law, stalking is the willful, malicious, and repeated following—or willful and malicious harassment—of another person along with credible threats with the intent to place that person in reasonable fear for their own or their family's safety. Cal. Pen. Code § 646.9(a). Griffin reported that Beverly had been following her for several weeks preceding Beverly's arrest. (SUF ¶ 7.) Griffin also reported that Beverly had made threats at two separate times that day, showing up at Griffin's home with family members and friends. (SUF ¶¶ 8–10.) Griffin and her daughter stated to the Deputies that they were in fear for their safety. (SUF ¶ 11.) Given that the Deputies had information regarding Beverly's stalking from several witnesses, along with the objective text-message evidence, the Deputies had much more than "mere suspicion" to believe that Beverly had violated section 646.9(a). While Beverly was ultimately cleared of the charge, the Deputies were only able to act upon the information they knew at the time—information that established a fair probability to believe that Beverly stalked and threatened Griffin. The Court therefore finds that the Deputies had probable cause to arrest Beverly—and consequently that Camps and Kim did not violate Beverly's Fourth Amendment rights.

## 2. *False imprisonment*

The Fourteenth Amendment's Due Process Clause protects individuals against deprivations of liberty without due process of law. U.S. Const., amend. XIV. Due process guarantees individuals the right to be free from incarceration absent a criminal conviction. *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir.2002). Before trial, an individual cannot be detained except upon a showing of probable cause either before

or promptly after arrest. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). To make out a claim for false imprisonment, a plaintiff must show "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 495 (Ct. App. 2000).

Beverly argues that the imprisonment was without lawful privilege because Deputies Camps and Kim did not have probable cause to arrest and imprison her. But as discussed above, the information presented to the Deputies from Griffin and her daughter along with admissions from Beverly in person and through her text messages to Griffin resulted in the Deputies having probable cause to arrest Beverly for stalking. Since probable cause existed at the time of Beverly's arrest, Beverly's claim of false imprisonment necessarily fails.

### 3. *Malicious prosecution*

The general rule is that a malicious prosecution claim under § 1983 is not available if a state remedy is available. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). But an exception exists when the malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or otherwise deny that person of constitutional rights. *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc). Therefore, "a malicious prosecution plaintiff must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1198 (9th Cir. 1995).

A malicious prosecution claim under § 1983 is based on state-law elements. *See Usher*, 828 F.2d at 562. In California, a plaintiff must prove that the prosecution was (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice. *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (Ct. App. 1992).

/ / /

The Ninth Circuit has recognized that filing "a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *overruled in part on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). To rebut this presumption, a plaintiff bears the burden of producing evidence that the prosecutor acted contrary to her independent judgment, such as evidence that the officers supplied false information, withheld relevant information, or exerted unreasonable pressure on the district attorney. *Newman v. Cnty. of Orange*, 457 F.3d 991, 994 (9th Cir. 2006) (citing *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986)).

Beverly claims that the Deputies knowingly filed false police reports, made materially false statements to investigators and prosecutors that Beverly had violated the California Penal Code, and presented falsified evidence for the purpose of having Beverly wrongfully, unjustly, and falsely charged with crimes and to ensure that Beverly would be falsely and wrongfully prosecuted and imprisoned. (Compl. ¶ 48.) But Beverly concedes that she has no evidence that the Deputies filed false charges, made false statements, prepared false reports, or falsified or manufactured evidence. (SUF ¶ 78, 81.) Rather, it appears that the Los Angeles County District Attorney made an autonomous decision to prosecute Beverly. As Beverly is unable to produce any evidence that the Deputies interfered with the independent judgment of the prosecutor, she is unable to rebut the presumption of independence and her claim of malicious prosecution against the Deputies fails.

  *4. Conspiracy*

A conspiracy theory can support liability under § 1983. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). To prove a § 1983 conspiracy, the plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." *Id.* Each participant in the conspiracy need not know the exact details of the plan, but each

must at least share the common objective of the conspiracy. *Id.*

Beverly accuses Deputies Kim and Camps of being part of a conspiracy to violate her Fourth and Fourteenth Amendment rights. (Compl. ¶¶ 63–66.) But Beverly has offered no evidence to show how the Deputies, Sheriff's Department, Griffin, or anyone else conspired to violate Beverly's rights. (SUF ¶ 85.) Beverly may believe that high-ranking officials of the Sheriff's Department know about her First Amendment activities, but she has no evidence that they conspired against her. (SUF ¶¶ 54, 56.) Neither does she have any evidence that Deputies Kim and Camps were aware of her or her activities prior to her arrest. (SUF ¶ 57.) The Deputies deny having ever heard of Beverly prior to their investigation of Griffin's stalking complaint, and Beverly has proved nothing to the contrary. (SUF ¶ 15.) Beverly's conspiracy claims therefore fails for want of proof.

     5.    *First Amendment retaliation*

The First Amendment prohibits government officials from retaliating against an individual, including via criminal prosecutions, for exercising their protected right of speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). The victim of a government action designed to retaliate against and chill political expression is entitled to sue the responsible officers. *Mendocino Env't Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994). But a plaintiff may not recover when the claim is based on generalized and legitimate law-enforcement activities. *Id.*

To establish a First Amendment retaliation claim, a plaintiff must therefore show that (1) she was engaged in a constitutionally protected activity, (2) the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) that the protected activity was a substantial or motivating factor in the defendant's conduct. *Pinard v. Clatskanie Sch. Dist.*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1160–61 (N.D. Cal. 2009).

/ / /

But as discussed above, Beverly has no evidence to show that any Defendant knew of her prior to her arrest or that she was engaged in First Amendment activities in Antelope Valley. Deputies Kim and Camps only became aware of Beverly's connections to activist groups when Beverly told them *after* they arrested her. (SUF ¶ 25.) That some other, high-ranking Sheriff's Department officials may have known about Beverly's protests does not automatically mean that these Deputies knew—especially when there are no facts even establishing an inference that Camps and Kim received this top-down information. She has no evidence that her arrest was retaliatory or the result of anything other than Griffin's report and reviewing Beverly's text messages immediately preceding her arrest. (SUF ¶ 59.) Without being able to show that her First Amendment activities were a substantial or motivating factor—or even just *a* factor—Beverly's retaliation claim fails.

   *6. Failure to provide medical care*

The primary concern of the drafters of the Eighth Amendment's prohibition of "cruel and unusual punishments" was to proscribe "tortures and other barbarous methods of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). But the Amendment protects more than just physically barbarous punishments; it embodies "broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Id.* These principles establish the government's obligation to provide medical care for those that have been taken into physical custody. *See id.* at 103. A deliberate indifference to serious medical needs of prisoners constitutes an "unnecessary and wanton infliction of pain" that violates the Eighth Amendment. *Id.* at 104. But inadvertent failure to provide adequate medical care is not so "repugnant to the conscience of mankind" that the conduct violates the Eight Amendment. *Id.* at 105–06.

Beverly alleges that the Deputies demonstrated "deliberate indifference" to her medical needs. (Compl. ¶ 110.) She states she was denied water during booking and was not timely treated for her diabetes, thus resulting in adverse diabetic reactions.

1  (SUF ¶¶ 61, 63.)  After her arrest, Beverly made the Deputies aware of her diabetic
2  condition, and Deputy Hulse took her to Palmdale Regional Medical Center where she
3  was evaluated by a physician and nurse.  (SUF ¶¶ 27, 28, 32, 34.)  The doctor and
4  nurse were aware of Beverly's diabetes, and she was provided water upon request.
5  (SUF ¶¶ 33–38.)  Nothing indicated that she was suffering from dehydration or her
6  diabetes.  (SUF ¶ 67.)  The next evening, Beverly was taken to an infirmary for
7  diabetes treatment.  (SUF ¶ 40.)  Though asymptomatic, her insulin level was high,
8  and a nurse administered insulin and monitored her until her blood-glucose level
9  normalized.  (SUF ¶¶ 40–42.)  Though Beverly states in her compliant that she
10 "suffered adverse reactions" to this type of insulin, there is no indication that the nurse
11 was deliberately indifferent to the type of insulin Beverly received.  (Compl. ¶ 38.)
12 Further, Beverly did not name the nurse as a defendant in this case.  The Deputies
13 have no vicarious liability for anything the doctors or nurses did or failed to do.

14 Reviewing the hospital records, a board-certified internist found nothing to
15 indicate that Beverly was suffering from dehydration or any other medical
16 complication during the two hours that she did not receive water during booking.
17 (SUF ¶ 67.)  The internist determined that there is no reason to believe that Beverly
18 will require treatment for any injuries related to dehydration or diabetes stemming
19 from this incident.  (SUF ¶ 68.)  The medical review found that the Sherriff's
20 Department complied with the procedures established by Los Angeles County, that
21 Beverly received appropriate and adequate medical treatment, and that nothing
22 indicates a failure to provide medical care or a deliberate indifference to her medical
23 needs.  (SUF ¶¶ 69–70.)

24 Since Beverly has not established that any Defendant acted with deliberate
25 indifference to her medical needs, the Court finds that she has not established any
26 actionable Eighth Amendment violation.
27 / / /
28 / /

**C.     Bane Act**

Beverly also alleges that all Defendants violated California's Bane Act, Civil Code section 52.1. The Bane Act, among other things, authorizes a private cause of action if,

> [A] person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . .

Cal. Civ. Code § 52.1(a), (b). The California Court of Appeal has concluded that "the statute was intended to address only egregious interferences with constitutional rights, not just any tort." *Shoyoye v. Cnty. of L.A.*, 203 Cal. App. 4th 947, 959 (Ct. App. 2012).

The County can be vicariously liable under the Bane Act for the Deputies' actions because "California . . . has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees." *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002); *see also* Cal. Gov't Code § 815.2(a). The County is thus only immune if its employees are also immune. *Robinson*, 278 F.3d at 1016; *see* Cal. Gov't Code § 815.2(b).

Beverly does not articulate any actual threats or intimidations that Defendants used to interfere with her constitutional rights. She circularly argues that Defendants interfered with her constitutional rights because they allegedly violated her constitutional rights. (Compl. ¶ 99.) But as discussed above, Beverly has not established any underlying constitutional violation. Neither has Beverly alleged or produced evidence of any threats, intimidations, or coercion independent of the alleged constitutional violations that could potentially subject Defendants to Bane Act

/ / /

liability. The Court consequently finds that Beverly has not established that Defendants violated California Civil Code section 52.1.

## V. CONCLUSION

In summary, the Court finds that Beverly has not established any viable claims and therefore **GRANTS** Defendants' Motion for Summary Judgment in its entirety. (ECF No. 33.) A judgment will issue.

**IT IS SO ORDERED.**

January 21, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**